**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **Charles Kietzer,** | Court File No. _____ |
| | Case Type: _____ |
| Plaintiff, | The Honorable _____ |
| | |
| v. | |
| | |
| **Chad Boehnke;** and | **COMPLAINT** |
| **Boehnke Waste Handling;** | **(JURY TRIAL DEMANDED)** |
| | |
| Defendants. | |

## INTRODUCTION

1. This case arises from the Defendants' unlawful business practices—including violations of federal and state wage and hour laws, tortious interference with Plaintiff's existing and prospective contracts, and civil theft—which Defendants engaged in for the purpose of harming Plaintiff and Plaintiff's business, reputation, and goodwill.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy, exclusive of interests and costs, exceeds $75,000.

3. Additionally, this action arises under the Federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). As such, jurisdiction is proper under 28 U.S.C. 1331.

4. Plaintiff also asserts claims under the Minnesota Fair Labor Standards Act, Minn. Stat. § 177.21 *et seq.* ("MFLSA") and Minnesota Payment of Wages Act. These claims fall within the Court's supplemental jurisdiction conferred by 28 U.S.C. § 1367.

1

5. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in the District of Minnesota and the Defendants conduct business in the State of Minnesota.

## PARTIES

6. Plaintiff Charles Kietzer is an individual who resides at 16191 Old Forest Point, APT 302, Monument, CO 80132.

7. Upon information and belief, Defendant Chad Boehnke is an individual who resides at 409 4th Street N., Marietta, MN 56257.

8. Upon information and belief, Defendant Boehnke Waste Handling is an assumed name with its principal place of business at 409 4th Street N., Marietta, MN 56257.

9. Defendants Chad Boehnke and Boehnke Waste Handling are hereinafter interchangeably and/or collectively referred to as "Boehnke"

## FACTUAL BACKGROUND

10. Plaintiff Charles Kietzer ("Kietzer") works in the agricultural industry and is in the business of custom-hauling manure ("custom-hauling").

11. Custom-hauling is the process of removing animal waste byproduct and applying it to agricultural farmland for ground enhancement and nutrient delivery to crops. Custom-hauling requires specialized equipment including tractors, tankers, pumps, and other miscellaneous equipment. The highest demand for custom-hauling occurs during the Spring and Fall of each year.

12. Kietzer owns several tractors, tankers, pumps, and other miscellaneous equipment in order to operate his business, J & L Waste Handling LLC.

13. In 2006, Kietzer began working in Pipestone County, Minnesota.

14. Since 2006, Kietzer has had multiple customers, many of whom have continued to hire Kietzer to perform work for them year after year.

**Facts Relating to Wage and Hour Claims**

15. In November, 2015, after Kietzer completed his current year's jobs for customers, Kietzer began looking for additional work.

16. Kietzer learned that the Defendant, Chad Boehnke ("Boehnke"), had additional work that needed to be performed.

17. Boehnke runs a business under the assumed name Boehnke Waste Handling (Boehnke and Boehnke Waste Handling collectively referred to as "Boehnke").

18. Kietzer contacted Boehnke and proposed that Kietzer subcontract work from Boehnke.

19. Kietzer and Boehnke had no prior working relationship.

20. Boehnke refused Kietzer's offer to subcontract work out, and instead offered to hire Kietzer as another one of Boehnke's employees.

21. Boehnke and Kietzer agreed that Kietzer would be paid at an hourly rate of $18.00 per hour.

22. During 2015, Kietzer worked as an employee of Boehnke Waste Handling from November through December.

23. During the week of November 22 through November 28, Kietzer worked 52.5 hours for Boehnke (12.5 hours of overtime).

24. During the week of November 29 through December 5, Kietzer worked 79.5 hours for Boehnke (39.5 hours of overtime).

25. During the week of December 6 through December 12, Kietzer worked 36.5 hours for Boehnke.

26. During the week of December 13 through December 19, Kietzer worked 73.5 hours for Boehnke (33.5 hours of overtime).

27. During November and December, 2015, Kietzer worked a total of 85.5 hours of overtime for which he was not paid at a rate of at least one and a half times his normal rate.

28. In late December, 2015, Kietzer returned home to Colorado.

29. Boehnke failed to pay Kietzer any wages which were due and owing to Kietzer, including overtime, for several months.

30. Having not yet been paid, Kietzer began demanding payment from Boehnke in February, 2016.

31. Around March 1, 2016, Kietzer returned to Minnesota in an effort to collect payment from Boehnke.

32. Kietzer volunteered to assist Boehnke in his shop with the hope that Boehnke would pay Kietzer for his 2015 hours. Moreover, Kietzer was relying on payment from Boehnke in order to cover Kietzer's necessary operating expenses for the coming Spring.

33. Kietzer resumed working as an employee of Boehnke's in late March, 2016.

34. During this time and for several months following, Kietzer continued requesting payment from Boehnke.

35. Boehnke finally issued a check to Kietzer on May 17, 2016.

36. This check did not include overtime pay and Kietzer, to date, has not been paid for his overtime hours worked.

**Facts Relating to Kietzer's Other Claims**

37. In March, 2016, Kietzer resumed working as Boehnke's employee.

4

38. At this time, Boehnke proposed that Kietzer and Boehnke merge their companies. Kietzer responded that he would need more information from Boehnke regarding the specific details of such a merger before Kietzer would consider it.

39. Boehnke raised discussions regarding a merger between Boehnke and Kietzer several times over the following months; however, Boehnke did not provide Kietzer with the specific information that Kietzer requested and thus the conversations did not materialize into any sort of agreement between Kietzer and Boehnke.

40. As a result, conversations about merging ceased, and Boehnke and Kietzer did not merge.

41. As of April, 2016, Kietzer still had not been paid by Boehnke for the hours Kietzer worked in 2015. As a result, Kietzer was unable to pay for fuel, liability insurance, and other necessary costs and expenses on his own equipment.

42. To remedy this situation, Boehnke suggested that Kietzer move Kietzer's equipment onto Boehnke's property for storage (Kietzer was storing his equipment at another location) and continue using Boehnke's equipment while working as an employee for Boehnke.

43. Kietzer subsequently moved his equipment onto Boehnke's property.

44. The equipment that Kietzer moved onto Boehnke's property included four tractors, two tankers, two pumps, a load stand, and other miscellaneous equipment. This equipment was used by Kietzer to perform custom-hauling services for Kietzer's customers.

45. The approximate total value of this equipment is $150,000.

46. Kietzer continued as an employee of Boehnke until May, 2016, and then subsequently returned home to Colorado. Kietzer and Boehnke's employment relationship ended at this time.

47. In August, 2016, Kietzer returned to Minnesota to prepare for his fall-season customers.

48. By this time, Kietzer had secured his finances in order to be able to pay his liability insurance and other expenses on his equipment.

49. In September, 2016, Kietzer repeatedly called Boehnke and requested permission to retrieve Kietzer's equipment that was being stored on Boehnke's property.

50. Boehnke ignored Kietzer for a period of time. When Boehnke finally responded, he refused Kietzer's requests to collect his property.

51. Kietzer informed Boehnke that Kietzer had customers for whom he had agreed to do work and which would require Kietzer to retrieve his equipment.

52. Boehnke continued to refuse Kietzer's requests to retrieve his equipment.

53. In September, 2016, Kietzer also learned that Boehnke had on one occasion delivered one of Kietzer's tractors to a consignment sale with the intent to sell Kietzer's tractor. Kietzer had not given Boehnke permission to sell Keitzer's tractor. Moreover, Boehnke had not informed Kietzer of this intent.

54. Kietzer went to the consignment sale and retrieved his tractor before it was sold.

55. Kietzer continued making demands to Boehnke for the return of his property but Boehnke refused to let Kietzer retrieve his property.

56. Without his equipment, Kietzer was unable to perform work for customers in September, 2016.

57. Kietzer lost approximately $76,756 in revenue in September, 2016.

58. Kietzer lost approximately $22,977 in revenue in October, 2016.

59. Kietzer lost approximately $34,318 in revenue in November, 2016.

60. Kietzer lost approximately $134,051 in revenue in during the 2016 calendar year.

61. Kietzer will continue to lose revenue in the future as a result of Boehnke's unlawful retention of Kietzer's property.

62. Kietzer's inability to fulfill these contracts and contractual obligations caused damage to Kietzer's business, reputation, and goodwill.

63. As a result of his inability to perform work for his customers, Kietzer is unlikely to be able to obtain these contracts with his customers in future years.

## CAUSES OF ACTION

### COUNT I

### FLSA – Overtime and Record-Keeping Violations

64. Plaintiff re-alleges and incorporates each of the preceding paragraphs as if fully set forth herein.

65. Defendants regularly engage in interstate commerce.

66. Upon information and belief, Defendant's annual business done is in excess of $1,500,000.00.

67. Upon information and belief, Defendants knew or should have known that Plaintiff performed work that required payment of overtime pay for hours worked over forty per week.

68. By failing to pay Plaintiff overtime compensation for all hours worked in excess of forty, Defendants violated the FLSA, 29 U.S.C. § 201 *et seq.*

69. Further, by failing to accurately record, report, and/or preserve records of hours worked by Plaintiff, Defendants have failed to make, keep, and preserve records with respect to its employees sufficient to determine their wages, hours, and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. § 201 *et seq.*

70. The conduct of Defendants as set forth herein was willful and in bad faith, and done with reckless disregard of whether the conduct was prohibited by law, and has caused significant damages to Plaintiff.

71. Plaintiff seeks damages in the amount of his overtime wages for all hours worked in excess of forty, an equal amount as liquidated damages, interest, all costs and attorneys' fees incurred in prosecuting this claim, all other relief available under the FLSA, and all other legal and equitable relief as the Court deems just and proper.

## COUNT II

## MFLSA – Overtime and Record-Keeping Violations

72. Plaintiff re-alleges and incorporates each of the preceding paragraphs as if fully set forth herein.

73. At all relevant times, Defendants were and are employers within the meaning of the MFLSA.

74. Plaintiff worked for Defendants within the State of Minnesota at all relevant times and was an employee of Defendants as defined by the MFLSA.

75. During the period of time Plaintiff was employed by Defendant, Plaintiff performed work for which Plaintiff was not compensated in violation of the provisions of the MFLSA. Specifically, Defendants violated the MFLSA by failing to pay overtime wages to Plaintiff for all overtime hours worked.

76. Defendants further failed to maintain adequate time records of the hours worked by Plaintiff in violation of the MFLSA.

77. Defendants' failure to pay Plaintiff overtime wages for all hours worked over forty per week was done with reckless disregard of whether the conduct was prohibited by law.

78. As a result of Defendants' willful and knowing failure to properly compensate Plaintiff, Plaintiff suffered damages to be determined at trial.

79. Plaintiff seeks damages in the amount of his overtime wages for all hours worked in excess of forty, an equal amount as liquidated damages, interest, all costs and attorneys' fees incurred in prosecuting this claim, all other relief available under the MFLSA, and all other legal and equitable relief as the Court deems just and proper.

## COUNT III

## PAYMENT OF WAGES ACT – Minn. Stat. § 181.13

80. Plaintiff re-alleges and incorporates each of the preceding paragraphs as if fully set forth herein.

81. At all times relevant, Defendants were Plaintiff's "employer" within the meaning of Minn. Stat. § 181.13.

82. Plaintiff has demanded that Defendants pay Plaintiff all his earned and unpaid wages, including but not limited to the amounts he is owed for working hours in excess of 40 hours per workweek.

83. Notwithstanding Plaintiff's demand, Defendants have failed to pay Plaintiff all his earned but unpaid wages.

84. As a result, Defendants have violated Minn. Stat. § 181.13.

85. As a result of Defendants' conduct, Defendants are obligated to pay Plaintiff the penalty provided in Minn. Stat. § 181.13 and all relief provided under Minn. Stat. § 181.171.

## COUNT IV

### PAYMENT OF WAGES ACT – Minn. Stat. § 181.101

86. Plaintiff re-alleges and incorporates each of the preceding paragraphs as if fully set forth herein.

87. At all times relevant, Defendants were Plaintiff's "employer" within the meaning of Minn. Stat. § 181.101.

88. Minn. Stat. § 181.101 provides that an employer must pay all wages earned by an employee at least once every 31 days, and if all wages are not paid within 10 days of demand, the employer must pay a penalty of up to 15 days at the employee's average daily earnings rate.

89. Defendants violated Minn. Stat. § 181.101 by failing to pay all Plaintiff's earned wages within 31 days.

90. As a direct and proximate result of Defendants' conduct in violation of Minn. Stat. § 181.101, Plaintiff has suffered and continues to suffer loss of income and other damages.

91. Defendants are subject to penalties as provided under Minn. Stat. § 181.101 because they failed to pay Plaintiff all earned wages within 10 days of Plaintiff's demand.

92. As a result of Defendants' conduct, Plaintiff is entitled to all relief available under Minn. Stat. § 181.171.

## COUNT V

### TORTIOUS INTERFERENCE WITH CONTRACT

93. Plaintiff re-alleges and incorporates each of the preceding paragraphs as if fully set forth herein.

94. During the months of September, October, and November of 2016, Plaintiff had contracts and/or contractual obligations with several customers.

95. Defendants were aware of Plaintiff's contracts and/or contractual obligations.

96. Defendants, acting intentionally, with malice, with bad motive and without justification, interfered with Plaintiff's contracts and/or contractual obligations with Plaintiff's customers.

97. Plaintiff's contracts with Plaintiff's customers were breached and repudiated as a direct and proximate result of Defendants' actions.

98. As a result of Defendants' tortious interference with Plaintiff's contracts and/or contractual obligations, Plaintiff has suffered loss of past and future income, emotional distress, and other damages in an amount in excess of $134,051.

## COUNT VI

## INTERFERENCE WITH PROSPECTIVE ECONOMIC BENEFIT

99. Plaintiff re-alleges and incorporates each of the preceding paragraphs as if fully set forth herein.

100. Plaintiff had pre-existing business relationships in which Plaintiff provided custom-hauling services to customers in Pipestone and surrounding counties.

101. At all times relevant herein, Plaintiff sought to enter into contractual and business relationships to provide such services to customers.

102. With knowledge of Plaintiff's efforts to secure such contracts and business relationships, Defendants engaged in a course of conduct to interfere with Plaintiff's prospective economic advantage for the purpose of depriving Plaintiff of the economic benefits and advantages of these relationships.

103. Defendants intentionally interfered with Plaintiff's prospective economic advantage with malice toward Plaintiff and with a desire to injure Plaintiff in its business and property. Defendant engaged in this conduct with knowing disregard of Plaintiff's rights.

Defendant's interference with Plaintiff's prospective economic advantage was done through improper and unlawful means, including, but not necessarily limited to, misappropriating Plaintiff's machinery and commercial equipment necessary for Plaintiff to complete the work.

104.   Defendants' interference with Plaintiff's prospective economic advantage was done without justification or privilege.  Defendant's conduct has injured Plaintiff in its business and property, including, but not limited to, a loss of the anticipated economic advantage and gain to be derived from the relationships, in an amount presently unknown, but not less than $100,000.

105.   By reason of the foregoing acts, Plaintiff is entitled to an order enjoining Defendant from further acts, and to recover such actual damages as the jury may find Plaintiff to have sustained, along with punitive damages for Defendant's morally culpable conduct.

## COUNT VII

## CIVIL LIABILITY FOR THEFT – Minn. Stat. § 604.14

106.   Plaintiff re-alleges and incorporates each of the preceding paragraphs as if fully set forth herein.

107.   Minn. Stat. § 604.14 provides as follows: "A person who steals personal property from another is civilly liable to the owner of the property for its value when stolen plus punitive damages of either $50 or up to 100 percent of its value when stolen, whichever is greater."

108.   "Acts constituting theft" are set forth in Minn. Stat. § 609.52, subd. 2(a) and includes "intentionally and without claim of right…retains possession of movable property of another without the other's consent and with the intent to deprive the owner permanently of possession of the property[.]"

109.   In addition, "swindling, whether by artifice, trick, device, or any other means, obtains property or services from another person" is an "[a]ct[] constituting theft."

110. In addition, one who "intentionally commits any of the acts listed in this subdivision but with intent to exercise temporary control only and…the control exercised manifests an indifference to the rights of the owner or the restoration of the property to the owner" is an "[a]ct[] constituting theft."

111. The facts set forth above are "acts constituting theft" under Minn. Stat. § 609.52 subd. 2(a).

112. Plaintiff's machinery and commercial equipment represents his personal property and the value of that property when stolen by Defendants was approximately $150,000.00

113. Defendants have no bona fide and good faith "claim of right" to Plaintiff's property currently in their possession.

114. Defendants are accordingly liable for civil theft pursuant to Minn. Stat. § 604.14 and Minn. Stat. § 609.52 subd. 2(a) and Plaintiff is entitled to an award of double damages in an amount to be further determined at trial but not less than $150,000 plus interest, attorneys' fees, costs, and disbursements.

## COUNT VIII

## REPLEVIN

115. Plaintiff re-alleges and incorporates each of the preceding paragraphs as if fully set forth herein.

116. Plaintiff is the owner the personal property described above.

117. Defendants are in possession of the personal property that belongs to Plaintiff.

118. Plaintiff is entitled to an order directing Defendants to deliver to Plaintiff possession of Plaintiff's personal property.

119. If the Defendants have disposed of any personal property, Defendants are liable to Plaintiff for the replacement value of such personal property and any costs and penalties associated with the loss and/or destruction of such property.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Charles Kietzer prays for a judgment against Defendants Chad Boehnke and Boehnke Waste Handling as follows:

1. For an award of compensatory damages arising from past and future loss of income, unpaid overtime, emotional distress, and other damages in excess of 300,000.00;

2. For an award of punitive damages;

3. For Plaintiff's costs, disbursements, and attorneys' fees pursuant to law;

4. For all relief available under the FLSA, MFLSA, Minnesota Payment of Wages Act, and Minn. Stat. § 604.14, including punitive damages;

5. For declaratory and injunctive relief;

6. In addition to the foregoing, a writ of replevin awarding Plaintiff immediate possession of the property described above;

7. For such other and further relief available by statute;

8. For such other and further relief as this Court deems just and equitable.

Dated this 21st day of February, 2017.   **TYLER W. BRENNAN LAW, LLC**

/s/Tyler W. Brennan
Tyler W. Brennan, #0397003
333 N. Washington Ave. #300
Minneapolis, MN 55401
Phone: 612.349.2742
Fax: 612.288.1997
E: tyler@tylerwbrennanlaw.com

***ATTORNEY FOR PLAINTIFF***